IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 25, 2025 Session

IN RE LINCOLN S.[1] ET AL.

Appeal from the Chancery Court for Sullivan County
No. 16-Ck-40281    William K. Rogers, Judge[2]

_____

No. E2024-01574-COA-R3-PT
_____

The trial court denied a petition to terminate a mother's parental rights to two minor children on the grounds of abandonment by failure to support and failure to visit, as well as failure to manifest an ability and willingness to assume custody or financial responsibility for the children. We affirm the trial court's ruling that the petitioners proved no statutory ground for termination by clear and convincing evidence. Because the petitioners proved no grounds for termination, we need not address the children's best interests. We affirm the trial court's ruling and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and VALERIE L. SMITH, J., joined.

C. Christopher Raines, III, Kingsport, Tennessee, for the appellants, Michael S. and Erin S.

Edward Kershaw, Greeneville, Tennessee, for the appellee, Carla R.

---

[1] This Court has a policy of abbreviating the last names of children and other parties in cases involving termination of parental rights to protect their privacy and identities.

[2] Sitting by interchange.

# OPINION

## BACKGROUND

Michael S. ("Father") and Erin S. ("Stepmother" or, together, with Father, "Petitioners"), appeal the trial court's denial of a petition to terminate the parental rights of Carla R. ("Mother") to the parties' minor children, Lincoln S. and Ayla S. (the "Children"). Mother and Father divorced in June of 2016. As a result of the divorce, the parties agreed to a Permanent Parenting Plan ("Parenting Plan") that granted each parent equal parenting time and did not require either party to pay child support. From 2016 to 2019, both Mother and Father followed the Parenting Plan without any significant disruptions. However, in 2019, Mother developed a dependence on alcohol, lost her job in East Tennessee, and moved to Nashville for employment opportunities. Despite the move, Father and Mother did not return to court to modify their Parenting Plan. They instead reached a verbal agreement that Mother would exercise co-parenting time with the Children every other weekend with the help of the maternal grandmother, Christina Z. ("Grandmother").

From 2019 until early 2022, Mother attended several in-patient rehabilitation facilities for her alcoholism. In response, Father filed multiple motions to limit her time with the Children. Although Mother planned to find a job in Nashville, save money, and return to East Tennessee, her alcohol use progressed and inhibited this plan. In October of 2020, Father filed a Motion to Modify the Parenting Plan to limit Mother's parenting time. Following the filing of this motion, Mother and Father entered into a mediated agreement regarding time sharing. This motion and the mediated agreement are not included in the record. The parties filed the final order following mediation in January of 2021. Around this time, Mother moved back to East Tennessee.

Mother's alcoholism remained an issue, and she continued attempts to complete a rehabilitation program. Still, the trial court granted Mother FaceTime visits in the fall of 2021 but later suspended the visits for one week (the "November 2021 Order"). The trial court references this order in the record on appeal, but the order itself is not included in the record. At the end of November 2021, Father filed a Second Amended Motion to Suspend Parenting Time and Motion to Modify Child Support. The trial court heard this motion on December 10, 2021, with only Father and his counsel present. On December 13, 2021, Father prepared a proposed order providing that Mother could have no contact with the Children for six consecutive months, or until Mother was sober for at least six months with stable housing and gainful employment. The proposed order also provided that Mother would pay $247 per month in child support. Importantly, the trial court never signed and entered this order. Nonetheless, both parties and their respective counsel proceeded as if the order was in effect. Consequently, the procedural posture of the case is murky following the proposed 2021 order. Mother's attorney filed a motion to set aside the November 2021 order and a motion to quash a subpoena for Mother's rehabilitation records. Mother's attorney also informed Mother on January 14, 2022, that a no-contact order was in place until further notice or court action.

On May 27, 2022, just four months into the six-month no-contact period in the proposed order, Petitioners filed a Petition for Termination and Stepparent Adoption. Petitioners alleged that Mother abandoned the Children by failing to visit and support them. Petitioners also alleged that Mother failed to manifest an ability or willingness to assume custody or financial responsibility for the Children. Mother filed a *pro se* response to the petition in June, explaining that her former attorney advised her she was under a no-contact order indefinitely or until court action was taken. Mother also stated that she was never provided any document or order requiring her to pay child support. Further, Mother claimed she purchased clothing for Grandmother to deliver to the Children during this period, along with Valentine's Day and birthday gifts and cards.

A long delay ensued, and in July of 2023, Father filed a motion asking the trial court to set aside the November 2021 order allowing Mother to have limited Zoom communication with the Children. In response, Mother filed a Motion for Immediate Visitation and to Pay Child Support. In support of her motion, Mother cited the same November 2021 order, which remained in effect and granted her video calls. In the time between the filing of the termination petition and the hearing on these motions in April of 2024, Mother made significant progress toward sobriety and rebuilding her life in East Tennessee. In March of 2023, she successfully finished her last in-patient rehabilitation program and did not relapse. She found a new job working as a controller for a large company with a steady income. Additionally, she purchased a spacious home with room for the Children in East Tennessee with her new husband, Mark R. ("Stepfather"). Following a hearing on April 3, 2024, the trial court entered an order providing as follows:

1. The Court finds that Mother appears to be doing well and is fighting the demons that she had;

2. The Court Orders that Mother shall re-start her Zoom/Facetime[3] visitation and the Court expanding the time to 25 minutes on Tuesdays and Thursdays (or other days as the parties may agree);

3. The Court further finds that Mother shall pay child support to Father in the amount $1,050.00 per month. The child support worksheets are attached.

The $1,050.00 amount has a strike through it, and the order features a handwritten note by the trial court, providing that the parties will submit a revised child support worksheet.

Nonetheless, the termination petition remained pending, and the trial court held a final hearing on June 6, 2024. Mother, Stepfather, Father, Stepmother, and Grandmother testified. On direct examination, Mother reiterated her belief that she had been ordered to have no contact with the Children. Father testified that he had reviewed the unsigned,

---

[3] The parties and trial court refer to Zoom and FaceTime interchangeably throughout the record even though these are different products. In any event, it is clear they are referencing video calls.

proposed no-contact order. Similarly, Stepmother testified that to the best of her knowledge, there was a no-contact order in place during the relevant period and that Stepmother informed Mother of the same. Mother and Father both acknowledged in their testimony that the original parenting plan did not require Mother to pay child support. However, Mother testified that she never saw the proposed no-contact order, which purportedly required that she begin making child support payments. Mother also testified that during the relevant four-month period, she provided gifts and cards for the Children.

In an order entered September 30, 2024, the trial court denied the petition to terminate Mother's parental rights. The trial court cited the confusion created by the unsigned proposed order:

(11) There was an enormous amount of confusion in late 2021 and early 2022 as to the parties['] rights regarding the minor children as shown in the Court filings and the parties['] testimony. On November 29, 2021, Petitioner/Father filed a "Second Amended Motion to Suspend Parenting Time and Motion to Modify Child Support." A Notice of Hearing was set for December 10, 2021 and apparently a hearing was held but no Order was ever entered. Mother was in in-patient rehab at this time and was not at the hearing and apparently Mother's Counsel did not appear. On December 22, 2021 Counsel for Respondent/Mother filed a "Motion to Set Aside Order from Hearing" (i.e. the December 10, 2021 hearing) stating that Mother was in a residential treatment program and that Counsel never received notice of the hearing.

(12) The Court finds that [M]other was under the impression that a no-contact order was in place during the crucial four[-]month period prior to the adoption petition being filed. Her attorney at the time had advised her of such and on December 13, 2021, Counsel for Petitioner had prepared an order providing for NO CONTACT with the children. The "proposed" order also indicated child support of $247. The Order was never signed by Chancellor E.G. Moody. Of note are Chancellor Moody's written notes on the docket card which state "no contact for six months or until Defendant (Mother) proves she is capable."

(13) During the termination hearing, Counsel for Petitioner introduced the "Order" as Exhibit 3, and as having been signed and entered days after the December 10, 2021 hearing. In fact, no signed Order has ever been entered.

(14) This Court has previously found that [M]other has made a turn around in her life during a hearing on April 3, 2024 regarding visitation. By Order in this Court entered June 6, 2024 the Court found "based upon the

- 4 -

testimony today she appears to be doing well and is fighting the, []I guess demons that — that she's had . . ."

> (15) The Court finds that the parties have had Zoom visits for the past few months and the visits have gone extremely well.

> \* \* \*

> Mother will continue to have her Zoom visits every Tuesday and Thursday at 7 p.m. for twenty-five minutes. Mother shall have visits every other Saturday from 9 a.m. until 8 p.m. After two Saturday visits, the visits will be every other weekend from Friday at 6 p.m. until Saturday at 6 p.m. The parties will exchange the [C]hildren at the McDonalds at the Gray Exit unless agreed otherwise. The parties shall attend mediation within the next 3 months regarding on-going visitation. All other issues are reserved pending further orders.

Ultimately, the trial court determined that Mother did not willfully fail to visit the Children because everyone believed Mother was subject to a no-contact order during the relevant four-month period.[4] As to failure to support, the only order in effect regarding child support was the original Parenting Plan, which provided that neither party was required to pay child support. The trial court further concluded that Petitioners did not prove that Mother failed to manifest an ability and willingness to assume custody of or financial responsibility for the Children and failed to prove that termination was in the Children's best interests.

Petitioners timely appealed to this Court.

### ISSUES

The issues on appeal are restated and consolidated as follows:

I. Whether the trial court's judgment is a final appealable order.

II. Whether Mother waived her affirmative defense of lack of willfulness in her answer to the termination petition.

III. Whether the trial court correctly concluded that Petitioners failed to prove, by clear and convincing evidence, that Mother abandoned the Children and failed

---

[4] We note that the trial court's order states that Petitioners did not carry the burden of proving by clear and convincing evidence that Mother willfully abandoned the Children by failure to support or failure to visit. To the extent the trial court placed the burden of proving willfulness on Petitioners, this was error. Lack of willfulness is an affirmative defense that must be proven by Mother by a preponderance of the evidence. Tenn. Code Ann. § 36-1-102(1)(I). Our thorough review and analysis of the record in this case, however, leads us to conclude that this error is not fatal because the evidence supports a finding that Mother proved lack of willfulness by a preponderance of the evidence.

to manifest an ability and willingness to assume custody of or financial responsibility for the Children.

IV.     Whether the trial court correctly concluded that Petitioner failed to prove, by clear and convincing evidence, that terminating Mother's parental rights is in the Children's best interests.

## STANDARD OF REVIEW

"A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest." *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (citing Tenn. Code Ann. § 36-1-113(c)). "Because of the profound consequences of a decision to terminate parental rights, a petitioner must prove both elements of termination by clear and convincing evidence." *In re Markus E.*, 671 S.W.3d 437, 456 (Tenn. 2023). This heightened burden "minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights" and "enables the fact-finder to form a firm belief or conviction regarding the truth of the facts[.]" *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016) (citing *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010)). "The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005)).

As our Supreme Court recently explained, we employ a two-step process in reviewing termination cases:

> To review trial court decisions, appellate courts use a [] two-step process, to accommodate both Rule 13(d) of the Tennessee Rules of Appellate Procedure and the statutory clear and convincing standard. First, appellate courts review each of the trial court's specific factual findings de novo under Rule 13(d), presuming each finding to be correct unless the evidence preponderates against it. *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); *In re Justice A.F.*, [No. W2011-02520-COA-R3-PT,] 2012 WL 4340709, at *7 [(Tenn. Ct. App. Sept. 24, 2012)]. When a trial court's factual finding is based on its assessment of a witness's credibility, appellate courts afford great weight to that determination and will not reverse it absent clear evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re Justice A.F.*, 2012 WL 4340709, at *7 (citing *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005)).

> Second, appellate courts determine whether the combination of all of the individual underlying facts, in the aggregate, constitutes clear and convincing evidence. *In re Taylor B.W.*, 397 S.W.3d at 112; *In re Audrey S.*, 182 S.W.3d

838, 861 (Tenn. Ct. App. 2005); *In re Justice A.F.*, 2012 WL 4340709, at *7. Whether the aggregate of the individual facts, either as found by the trial court or supported by a preponderance of the evidence, amounts to clear and convincing evidence is a question of law, subject to de novo review with no presumption of correctness. *See In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *see also In re Samaria S.*, 347 S.W.3d 188, 200 (Tenn. Ct. App. 2011). As usual, the appellate court reviews all other conclusions of law de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010)].

*In re Markus E.*, 671 S.W.3d at 457.

## DISCUSSION

*Subject Matter Jurisdiction*

First, we must determine whether the trial court's judgment is a final order over which this Court has subject matter jurisdiction. "Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo[.]" *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712–13 (Tenn. 2012) (quoting *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)). "Subject matter jurisdiction relates to a court's authority to adjudicate a particular type of case or controversy brought before it." *In re Est. of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012) (citing *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004)). As orders and judgments entered by a court lacking subject matter jurisdiction are void, "issues regarding a court's subject matter jurisdiction should be considered as a threshold inquiry" and "resolved at the earliest possible opportunity." *Id.* (citing *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012); *Brown v. Brown*, 281 S.W.2d 492, 497 (1955)).

Mother asserts that the trial court's order is not final. Generally, "[u]nless an appeal from an interlocutory order is provided by the rules or by statute, appellate courts have jurisdiction over final judgments only." *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990) (citing *Aetna Cas. & Sur. Co. v. Miller*, 491 S.W.2d 85 (Tenn. 1973)); *see also* Tenn. R. App. P. 3(a). A final judgment adjudicates all "claims, rights, and liabilities of all the parties," *Discover Bank v. Morgan*, 363 S.W.3d 479, 488 n.17 (Tenn. 2012), and "resolves all the issues in the case, 'leaving nothing else for the trial court to do.'" *In re Est. of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)).

In this case, the trial court denied the termination petition but ordered Mother to pay child support and required the parties to attend mediation to discuss ongoing custody issues. The order also reserves all other remaining issues pending further orders. Generally, reserving remaining issues for future adjudication renders a trial court's order nonfinal and thus not appealable to this Court. *See e.g.*, *Baxter v. Rowan*, 620 S.W.3d 889,

893 (Tenn. Ct. App. 2020) (order nonfinal where trial court's ruling expressly reserved issue of child's future prison visitation with incarcerated parent). Further, this Court has previously held that where a trial court denies a petition for termination of parental rights, but custody issues remain to be decided, the order on the termination petition is not an appealable final order. *In re Sophia P.*, No. M2015-01978-COA-R3-PT, 2016 WL 3090788 (Tenn. Ct. App. May 23, 2016).

However, "Rule 2 of the Tennessee Rules of Appellate Procedure permits us to suspend the final judgment requirement in our discretion if we find 'good cause' to do so and [if] judicial economy would best be served 'by addressing the issues on their merits in this appeal.'" *In re Est. of Schorn*, No. E2013-02245-COA-R3-CV, 2015 WL 1778292, at *7 (Tenn. Ct. App. Apr. 17, 2015) (quoting *Parker v. Lambert*, 206 S.W.3d 1, 4 (Tenn. Ct. App. 2006)). This case presents such good cause. We observe first that despite the expedited nature of termination proceedings, this matter took several years to be adjudicated. The parties have expended significant time on this action, and the Children's lives are in limbo while this matter remains pending. In fact, the parties agreed at oral argument that in the interim, the Children have re-established a good relationship with Mother. *See Baxter*, 620 S.W.3d at 893 ("[B]ecause the underlying case concerns potential visitation with a minor child, we conclude that it warrants some urgency in rendering a decision without additional delay."). Under these circumstances, we find good cause to exercise our discretion to suspend the final judgment requirement and address the termination issue on its merits. *See id*. We therefore turn to the substance of the trial court's ruling.

### Grounds for termination

The trial court concluded that Petitioners did not prove any of the alleged statutory grounds for termination by clear and convincing evidence, a conclusion Petitioners challenge on appeal. We address the relevant statutory grounds in turn.

### a. Abandonment by failure to visit and failure to support

Abandonment by a parent is grounds for termination of parental rights. Tenn. Code Ann. § 36-1-113(g)(1). Abandonment may occur, among other circumstances, when:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent . . . of the child who is the subject of the petition for termination of parental rights or adoption, that the parent . . . ha[s] failed to visit or ha[s] failed to support or ha[s] failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(i) (effective May 9, 2022).[5] It is an affirmative defense to abandonment for both failure to support and failure to visit that the parent's failure is not willful. *Id.* § 36-1-102(1)(I). "Such defense must be established by a preponderance of evidence." *Id.* "That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant four-month period[.]" *Id.* § 36-1-102(1)(D). Support must be more than just "token support," which is support that "under the circumstances of the individual case, is insignificant given the parent's means[.]" *Id.* § 36-1-102(1)(B).

Likewise, visitation must amount to more than token visitation; "token visitation" is that which, "under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child[.]" *Id.* § 36-1-102(1)(C).

Regarding abandonment, the trial court ultimately determined that Mother's failure to visit and failure to support were not willful, and we agree with the trial court. All the parties believed that Mother was subject to a no-contact order during the relevant time frame and that she had to maintain sobriety for a minimum of six months before any visitation could resume. Stepmother testified that she saw Mother in public during the relevant period and told Mother she could not have contact with the Children. Moreover, Mother testified that her former counsel informed her that a no-contact order was in place, testimony which the trial court clearly credited. Mother believed that rehabilitation was a necessary step toward reunification and lifting the purported no-contact order, and she worked to that end. A no-contact order, or in this case a purported one, "does not preclude a finding of willfulness." *In re Jaylah W.*, 486 S.W.3d 537, 551 (Tenn. Ct. App. 2015). Rather, a parent can be found to have failed to visit when a no-contact order provides steps for regaining visitation and the parent fails to take those steps. *Id.* In this case, however, Mother justifiably believed that a six-month sobriety period was required in order to regain visitation, and Petitioners filed the termination petition before that six months could lapse.

"Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *In re Audrey S.*, 182 S.W.3d at 863. Therefore, a parent's failure to visit or support their child is "willful" when the parent is "aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *In re Addalyne S.*, 556 S.W.3d 774, 783 (Tenn. Ct. App. 2018). Against this backdrop, Mother proved by a preponderance of the evidence that her failure to visit was not willful.

---

[5] In termination cases, we apply the version of the statute in effect at the time the petition was filed. *See In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017).

Likewise, the trial court determined that Mother did not abandon the Children through failure to support. We agree. First, we note that there was no order entered requiring Mother to pay child support during the relevant four-month period because the trial court never signed and entered the proposed no-contact order. The order in effect during the relevant four-month period was the parties' original Parenting Plan providing that neither party owed the other party child support. Although "[e]very parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children[,]" Tenn. Code Ann. § 36-1-102(1)(H), this statute is normally applied in cases in which a child is in the custody of Tennessee's Department of Children's Services. This case is anomalous because it is not a DCS case, but rather a termination action between private parties who had a custody arrangement in place. Divorced parents who share minor children handle child support through their parenting plan and by filing a modification to same, if necessary. *Wine v. Wine*, 245 S.W.3d 389, 393 (Tenn. Ct. App. 2007). And in this case, the parties' plan, which was the operative court order during the relevant period, provides that Mother owed no child support. Section 36-1-102(1)(H) is thus not fatal to Mother's argument.

Further, the record bears out the trial court's finding that Mother provided items to the Children during the relevant period. Mother testified that she sent gifts and cards for the Children's birthdays and major holidays. She did this while under the impression she could not speak to them. Again, considering the very specific circumstances of this case, we agree with the trial court that Petitioners did not carry their burden regarding this ground.

Lastly, we are unconvinced by Father's argument that Mother waived her willfulness defense by failing to properly raise it in her answer. *See* Tenn. Code Ann. § 36-1-102(1)(I) (providing that lack of willfulness is a defense pursuant to Tennessee Rule of Civil Procedure 8.03). Mother filed an answer, *pro se*, explaining her belief that she was subject to a no-contact order. The answer provides that "I would not *willingly* be separated from my children for that length of time if not misinformed." (Emphasis added). Although Mother's answer does not cite the relevant statute, her answer sufficiently raises lack of willfulness as an affirmative defense. *See Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (explaining that while this Court cannot create or argue defenses on a *pro se* party's behalf, we review their filings for substance rather than form).

As the trial court aptly noted, "[t]here was an enormous amount of confusion in late 2021 and early 2022 as to the parties['] rights regarding the minor children as shown in the Court filings and the parties['] testimony." Inasmuch as grounds for termination must be proven by clear and convincing evidence, an exacting evidentiary standard, we cannot conclude that Petitioners carried their burden in the face of such enormous confusion. Under these circumstances, we agree with the trial court that Petitioners ultimately failed to carry their burden of proof, and we affirm the trial court's ruling.

### b. Failure to manifest an ability and willingness

The final statutory ground for termination alleged by Petitioners is failure to manifest an ability and willingness to assume legal and physical custody of the Children. This ground applies when:

> A parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

Tenn. Code Ann. § 36-1-113(g)(14) (effective July 1, 2021). A petitioner must prove both elements of this ground by clear and convincing evidence. *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020). Under the statute, a parent must "manifest both an ability and willingness" to personally assume legal and physical custody or financial responsibility of the child. *Id.* at 677. Therefore, the party seeking termination of parental rights can satisfy this element by establishing the other parent or guardian failed to manifest *either* an ability or a willingness. *Id.* To meet the second element, the petitioner must prove that placing the child in the parent's custody poses "a risk of substantial harm to the physical or psychological welfare of [the child]." *Id.* Regarding this element,

> [t]he courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*In re Virgil W.*, No. E2018-00091-COA-R3-PT, 2018 WL 4931470, at *8 (Tenn. Ct. App. Oct. 11, 2018) (quoting *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001)).

The trial court found that Petitioners also failed to carry their burden of proof as to this ground for termination. As a threshold problem, we note that the trial court appears to have applied a four-month determinative period in considering section 36-1-113(g)(14). This is incorrect, as section (g)(14) does not contain a determinative statutory period. *See In re Isabella G.*, No. M2022-00246-COA-R3-PT, 2023 WL 1131230, at *12 (Tenn. Ct. App. Jan. 31, 2023) ("[S]ection (g)(14) does not mention any particular four-month period."). Instead, this ground for termination "focuses on the parent's actions throughout the life of the Child." *Id.* (citing *In re Neveah M.*, 614 S.W.3d at 677). In any event, the proof before us establishes that, throughout the Children's lives, Mother has manifested a willingness and ability to assume custody and financial responsibility for the Children. She

remained actively involved in custody litigation and worked toward her sobriety to regain her visitation. The trial court also noted that by the time of the final hearing, Mother had a stable job with steady income, as well as a safe and suitable home for the Children. Even when she believed she was under a no-contact order restricting access to the Children, she sent them gifts and cards on holidays and birthdays, as did the Children's maternal grandmother. Mother's actions in this case are distinguishable from parents who fail to manifest an ability and willingness to parent their children. *Id.* ("The proof in this case establishes that throughout the [c]hild's life thus far, Father has shown little interest in parenting. . . . Father has never fixed the [c]hild a meal or taken her to a doctor's appointment.").

We affirm the trial court as to this ground.

*Best Interests*

To terminate parental rights, a petitioner must establish at least one statutory ground for termination. Tenn. Code Ann. § 36-1-113(c). Because Petitioners have established no ground for termination, we need not consider the Children's best interests.

Accordingly, we affirm the trial court's ruling denying the termination petition.

## CONCLUSION

The judgment of the Chancery Court for Sullivan County is affirmed, and this case is remanded for further proceedings consistent with this opinion. Costs on appeal are assessed to the appellants, Michael S. and Erin S., for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE